IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL NO. *3:14cr111 HTW-FKB*

CHRISTOPHER B. EPPS and
CECIL MCCRORY

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
AUG 05 2014
ARTHUR JOHNSTON
BY _____ DEPUTY

18 U.S.C. § 1349
18 U.S.C. § 666(a)(1)(B)
18 U.S.C. § 666(a)(2)
18 U.S.C. § 1956(h)
18 U.S.C. § 1346
31 U.S.C. § 5324(a)(3)
18 U.S.C. § 1956(a)(1)(B)(i)
26 U.S.C. § 7206(2)

**The Grand Jury charges:**

At all times relevant to this indictment:

1.    The Mississippi Department of Corrections ("MDOC") was a state government

agency as that term is defined in Section 666(d), Title 18, United States Code, and which

received benefits in excess of $10,000 annually between 2007 and 2014 under Federal programs

providing Federal assistance to the MDOC.

2.    Defendant **CHRISTOPHER B. EPPS** was the Commissioner of the Mississippi

Department of Corrections and as such was an agent of the MDOC, as that term is defined in

Section 666(d), Title 18, United States Code.

3.    Defendant **CECIL MCCRORY** was a local businessman from Rankin County,

Mississippi, who owned companies that contracted, signed leases or otherwise did business with

MDOC, including but not limited to Correctional Communications, Inc.; College Street Leasing,

LLC; American Transition Services, LLC; and G.T. Enterprises of Mississippi, Inc.

**MCCRORY** was also paid consulting fees by other companies seeking or receiving contracts with MDOC or for work completed for MDOC, including but not limited to Cornell Corrections, Inc.; The GEO Group, Inc.; Management & Training Corporation; Centric Group, LLC d/b/a Keefe Commissary Network, LLC; Adminpros, LLC; Wexford Health Sources, Inc.; Bantry Group; and Branan Medical.

## COUNT 1

4.     The allegations contained in paragraphs 1 through 3 of this indictment are realleged and incorporated by reference as though fully set forth herein.

5.     From in or about 2007 through in or about March 12, 2014, in Hinds and Rankin County in the Northern Division of the Southern District of Mississippi, and elsewhere, the defendants, **CHRISTOPHER B. EPPS and CECIL MCCRORY**, did knowingly and intentionally combine, conspire, confederate, and agree with each other, to commit one or more of the following offense: to devise and intend to devise a scheme and artifice to defraud the Mississippi Department of Corrections and the State of Mississippi and its citizens of their intangible right to **CHRISTOPHER B. EPPS's** honest services, through bribes and kickbacks, by use of interstate wire transmissions, in violation of Sections 1343 and 1346, Title 18, United States Code.

6.     It was the object of the conspiracy that defendant, **CECIL MCCRORY**, would bribe or provide kickbacks to **CHRISTOPHER B. EPPS**, Commissioner of the Mississippi Department of Corrections, in exchange for the awarding of MDOC contracts, leases, or work to companies owned by **MCCRORY** or to companies seeking contracts or providing services to

MDOC who had agreed to pay, were paying or already had paid **MCCRORY** as a consultant.

7.     It was part of the conspiracy that companies owned by defendant **MCCRORY** would be awarded contracts, leases or other work from MDOC.

8.     It was also part of the conspiracy that defendant **EPPS**, in his position as Commissioner of the Mississippi Department of Corrections, would steer and direct such contracts to defendant **MCCRORY's** companies, sometimes recommending to the Mississippi State Personnel Board that companies owned by or associated with **MCCRORY** be given contracts by MDOC on a no-bid or sole source procurement basis.

9.     It was further part of the conspiracy that defendant **MCCRORY** secretly paid defendant **EPPS**, either in cash, through checks made payable to financial institutions holding the mortgage for **EPPS's** home, or through wire transfers to financial institutions holding loans for **EPPS** or to investment accounts owned by **EPPS**, in return for **EPPS's** assistance in ensuring MDOC awarded or renewed contracts and leases to companies owned by **MCCRORY** or to companies which had hired **MCCRORY** as a consultant.

10.     It was further part of the conspiracy that, in order to keep their relationship and financial arrangement confidential, defendant **EPPS** would store cash bribe payments received from defendant **MCCRORY** in **EPPS's** safe at home, wherein **EPPS** would later structure the deposits of such cash into **EPPS's** various bank accounts or purchase cashier's checks, all in amounts not greater than $10,000.

In furtherance of the conspiracy and to carry out its objectives, the following acts, among others, were committed:

11. On or about November 2, 2007, defendant **EPPS** signed a no-bid MDOC contract awarded to G.T. Enterprises, a company owned by defendant **MCCRORY**, for commissary services at state prisons and private facilities which housed state inmates.

12. In or about 2007, defendant **EPPS** solicited money from defendant **MCCROY** in exchange for the contract that defendant **MCCRORY's** company had with MDOC at that time.

13. In or about 2007, defendant **MCCRORY** paid defendant **EPPS** multiple cash payments in the amount of $3,000 to $4,000 on approximately fifteen occasions for the MDOC contract that had been awarded to defendant **MCCRORY's** company.

14. In or about March 2008, defendant **EPPS** approved the assignment of the MDOC contract held by defendant **MCCRORY's** company, G.T. Enterprises, to another company, the Centric Group, doing business as Keefe Commissary, LLC, resulting in a large profit for **MCCRORY**.

15. Shortly thereafter, defendant **EPPS** solicited defendant **MCCRORY** to pay off **EPPS's** home mortgage.

16. On July 25, 2008, defendant **MCCRORY** purchased a cashier's check in the amount of $100,000 from his personal bank account at Community Bank, and had such check made payable and sent to Countrywide Bank, which held the mortgage for defendant **EPPS's** home, with such check being applied to the mortgage for defendant **EPPS's** home in Flowood, Mississippi.

17. On October 2, 2008, defendant **MCCRORY** purchased a second cashier's check in the amount of $100,000 from his personal bank account at Community Bank, and had such

check made payable and sent to Countrywide Bank, which held the mortgage for defendant **EPPS's** home, with such check being applied to the mortgage for defendant **EPPS's** home in Flowood, Mississippi.

18. On October 24, 2008, defendant **EPPS** signed a contract awarded by MDOC to Adminpros, LLC, which was a company that later paid defendant **MCCROY**.

19. On or about December 9, 2008, defendant **EPPS** signed a lease between MDOC and College Street Leasing, a company owned by defendant **MCCRORY**, for the use of land and facilities upon which to operate a new inmate transition facility for males in Walnut Grove, Mississippi.

20. On January 5, 2009, defendant **MCCRORY** purchased a third cashier's check from his personal bank account at Community Bank in the amount of $50,000 and made payable to Countrywide Bank, which held the mortgage for defendant **EPPS's** home, with such check being applied to the mortgage for defendant **EPPS's** home in Flowood, Mississippi.

21. On April 2, 2009, defendants **EPPS** and **MCCRORY** signed a lease between MDOC and College Street Leasing, a company owned by defendant **MCCRORY**, for the use of land and facilities upon which to operate an inmate transition facility for females in Walnut Grove, Mississippi.

22. On July 16, 2009, defendants **EPPS** and **MCCRORY** signed a contract awarded by MDOC to American Transition Services, a company owned by defendant **MCCRORY**, to operate and manage the men's facility at the Walnut Grove Transition Center.

23. On July 28, 2009, defendant **MCCRORY** purchased a fourth cashier's check at

Community Bank in the amount $101,309.81, made payable to "BAC [Bank of America] Home Loan Servicing, LP", which had succeeded Countrywide Bank in servicing defendant **EPPS's** home mortgage, with such check being applied to and finally paying off the mortgage of defendant **EPPS's** home in Flowood, Mississippi.

24.     A short time later, after defendant **EPPS's** home had been completely paid off by defendant **MCCRORY**, **EPPS** told **MCCRORY** that **MCCRORY** could get anything he wanted in the future from MDOC through **EPPS**.

25.     On July 30, 2009, Epps deposited (1) $9,000 cash at the Regions bank branch in Flowood, Mississippi at 2:16 p.m.; (2) $9,000 cash at the BankPlus in Flowood, Mississippi at 2:31 p.m.; (3) $9,000 cash at the Regions bank branch in Jackson, Mississippi at 2:53 p.m.; and (4) $9,000 cash at the Mississippi Public Employees Credit Union ("MSPECU") in Jackson, Mississippi, the latter of which was used to purchase a $9,000 official check which was made payable to **EPPS's** Edward Jones investment account.

26.     On August 15, 2009, defendants **EPPS** and **MCCRORY** signed a contract awarded by MDOC to American Transition Services, a company owned by defendant **MCCRORY**, to operate and manage the women's facility at the Walnut Grove Transition Center.

27.     On July 29, 2010, defendant **EPPS** signed a contract awarded by MDOC to Adminpros, LLC, which was a company that paid defendant **MCCRORY**.

28.     On January 24, 2011, defendant **EPPS** signed a contract awarded by MDOC to Adminpros, LLC, which was a company that paid defendant **MCCRORY**.

29.     On July 29, 2011, defendant **EPPS** signed a contract awarded by MDOC to Adminpros, LLC, which was a company that paid defendant **MCCRORY**.

30.     In or about July 2012, defendant **EPPS** signed a contract awarded by MDOC to Adminpros, LLC, which was a company that paid defendant **MCCRORY**.

31.     In August 2012, defendant **EPPS** signed a contract awarded by MDOC to Management & Training Corporation, which was a company that paid defendant **MCCRORY**.

32.     On August 21, 2012, defendant **MCCRORY** wired $34,000 from his business account at Merchant & Farmers Bank directly to Wells Fargo Home Mortgage, which held the loan for defendant **EPPS's** condominium in Biloxi, Mississippi, with such money being used to pay down **EPPS's** Biloxi condominium loan.

33.     On September 14, 2012, defendant **EPPS** signed a contract awarded by MDOC to Management & Training Corporation, which was a company that **EPPS** had persuaded to hire defendant **MCCRORY** as a consultant and a company with whom **EPPS** had personally negotiated **MCCRORY's** consulting fee, telling **MCCRORY** later, "I got us $12,000 per month," which they ultimately divided evenly after calculating the taxes that **MCCRORY** would be responsible for as having received the income.

34.     On September 25, 2012, defendant **MCCRORY** wired $14,000 from his business account at Merchant & Farmers Bank directly to Wells Fargo Home Mortgage, which held the loan for defendant **EPPS's** condominium in Biloxi, Mississippi, with such money being used to pay down **EPPS's** Biloxi condominium loan.

35.     On or about October 18, 2012, defendant **EPPS** signed a no-bid contract awarded

by MDOC to Management & Training Corporation, which was a company that paid defendant **MCCRORY**.

36. On February 14, 2013, defendant **MCCRORY** wired $40,000 from his business account at Merchant & Farmers Bank directly to defendant **EPPS's** Edward Jones investment account ending in x-6410, falsely labeling the wire transaction as a consignment sale of farm equipment to conceal and disguise the scheme.

37. On or about July 15, 2013, defendant **EPPS** signed a no-bid contract awarded by MDOC to Management & Training Corporation, which was a company that paid defendant **MCCRORY**.

38. On or about July 17, 2013, defendant **EPPS** wrote a letter to the Mississippi State Personnel Board requesting "sole source procurement" for Adminpros, LLC, resulting in Adminpros being awarded a no-bid contract by MDOC later that month.

39. On September 4, 2013, defendant **MCCRORY** wired $50,000 from his business account at Merchant & Farmers Bank directly to defendant **EPPS's** Edward Jones investment account ending in x-6410.

40. On or about October 8, 2013, defendant **EPPS** wrote a letter to the Mississippi State Personnel Board stating that Adminpros "is the only vendor that performs Medicaid eligibility services for inmates" and "is the only vendor that can provide the services as outlined in the attached contract[,]" resulting in Adminpros being awarded a no-bid contract by MDOC later that month.

41. Beginning in or about 2010, defendant **MCCRORY** gave defendant **EPPS** a cash

bribe payment of several thousand dollars each month emanating from the consulting fees that **MCCRORY** had earned from companies doing business with MDOC, including, but not limited to, on or about the following dates:

| A. | November 18, 2013 | $8,000 |
|----|-------------------|--------|
| B. | December 24, 2013 | $8,000 |
| C. | February 7, 2014  | $8,000 |
| D. | March 6, 2014     | $8,000 |

42.     During the time period of the conspiracy, defendant **MCCRORY** never provided defendant **EPPS** or the Internal Revenue Service with a Form 1099 reporting the income provided to **EPPS** by **MCCRORY** throughout the time period of the conspiracy.

43.     From January 2008 through June 2014, defendant **EPPS** structured over $900,000.00 in cash either by depositing such cash into his checking accounts or by purchasing cashier's checks with such cash, almost all such transactions in amounts not greater than $10,000.00, in order to avoid the reporting requirements of the financial institutions and to further conceal the defendants' bribery and kickback scheme.

All in violation of Section 1349, Title 18, United States Code.

## COUNTS 2-13

44.     The allegations contained in paragraphs 1 through 44 of this indictment are realleged and incorporated by reference as though fully set forth herein.

45.     That beginning and continuing through in or about the dates listed below, in Hinds and Rankin County in the Northern Division of the Southern District of Mississippi, the defendant, **CHRISTOPHER B. EPPS**, did corruptly solicit and demand for the benefit of any person, things of value from a person, that is from **CECIL MCCRORY**, intending to be

influenced and rewarded in connection with a transaction and series of transactions of the

Mississippi Department of Corrections involving $5,000 or more:

| COUNT | DATES | BRIBE/KICKBACK AMOUNT |
|---|---|---|
| 2 | August 21, 2012 | $34,000 |
| 3 | September 25, 2012 | $14,000 |
| 4 | February 14, 2013 | $40,000 |
| 5 | September 4, 2013 | $50,000 |
| 6 | September 24, 2013 | $9,000 |
| 7 | November 18, 2013 | $8,000 |
| 8 | December 24, 2013 | $8,000 |
| 9 | February 7, 2014 | $8,000 |
| 10 | March 6, 2014 | $8,000 |
| 11 | April 9, 2014 | $8,000 |
| 12 | May 9, 2014 | $8,000 |
| 13 | June 19, 2014 | $18,000 |

All in violation of Section 666(a)(1)(B), Title 18, United States Code.

## COUNTS 14-22

46. The allegations contained in paragraphs 1 through 45 of this indictment are

realleged and incorporated by reference as though fully set forth herein.

47. That beginning and continuing through in or about the dates listed below, in Hinds

and Rankin County in the Northern Division of the Southern District of Mississippi, the

defendant, **CECIL MCCRORY**, did corruptly give, offer, and agree to give a thing of value to

any person intending to influence and reward **CHRISTOPHER B. EPPS**, Commissioner of the

Mississippi Department of Corrections, in connection with a transaction and series of

transactions of the Mississippi Department of Corrections involving $5,000 or more:

| COUNT | DATES | BRIBE/KICKBACK AMOUNT |
|---|---|---|
| 14 | August 21, 2012 | $34,000 |
| 15 | September 25, 2012 | $14,000 |
| 16 | February 14, 2013 | $40,000 |
| 17 | September 4, 2013 | $50,000 |
| 18 | September 24, 2013 | $9,000 |
| 19 | November 18, 2013 | $8,000 |
| 20 | December 24, 2013 | $8,000 |
| 21 | February 7, 2014 | $8,000 |
| 22 | March 6, 2014 | $8,000 |

All in violation of Section 666(a)(2), Title 18, United States Code.

## COUNT 23

48.     The allegations contained in paragraphs 1 through 47 of this indictment are realleged and incorporated by reference as though fully set forth herein.

49.     From in or about 2007 through in or about March 12, 2014, in Hinds and Rankin County in the Northern Division of the Southern District of Mississippi, and elsewhere, the defendants, **CHRISTOPHER B. EPPS and CECIL MCCRORY**, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, bribery and kickbacks, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

50.     During the time period of the conspiracy, defendant **MCCRORY** wired several large bribe payments to the financial institutions that held the mortgage for defendant **EPPS**'s home in Flowood, Mississippi, with **EPPS** later using the equity from the proceeds of that specified unlawful activity to take out a loan to purchase a condominium in Biloxi, Mississippi, thus concealing and disguising the nature and source of the proceeds from the specified unlawful activity.

51.     During the time period of the conspiracy, defendant **MCCRORY** gave cash bribes and kickbacks to defendant **EPPS**, which **EPPS** would put in his safe at home until he was ready to deposit such cash bribes into his various bank accounts or use such cash to purchase cashier's checks, later structuring such deposits and purchases in order to conceal and disguise the nature and source of these proceeds of this specified unlawful activity.

52.     During the time period of the conspiracy, defendant **MCCRORY** also wired a large bribe payment to defendant **EPPS**'s Edward Jones Investment Account, from which **EPPS** was able to wire money and trade in his Biloxi condominium for a larger, more expensive condominium in Pass Christian, Mississippi, thus continuing to conceal and disguise the nature and source of the proceeds of the specified unlawful activity.

All in violation of Section 1956(h), Title 18, United States Code.

53.     The allegations contained in paragraphs 1 through 52 of this indictment are

realleged and incorporated by reference as though fully set forth herein.

54.     From in or about 2007 through in or about June 24, 2014, in Hinds and Rankin

County in the Northern Division of the Southern District of Mississippi, and elsewhere, the

defendants, **CHRISTOPHER B. EPPS and CECIL MCCRORY**, and others known and

unknown to the Grand Jury, devised, intended to devise, and participated in a scheme and artifice

to defraud and deprive the citizens of the State of Mississippi, the State of Mississippi, and the

Mississippi Department of Corrections of money, property and the intangible right to the honest

services of defendant **EPPS** and the concealment of material information.

55.     The purpose of the scheme and artifice described in Count 1 was for defendant

**EPPS** to secretly use his official position to enrich himself and others by soliciting and accepting

gifts, payments, and other things of value from defendant **MCCRORY** in exchange for favorable

official action and for **MCCRORY** to enrich himself by secretly obtaining favorable official

action for himself, his companies, and his clients through corrupt means.

The scheme and artifice was carried in the following manner and means, among others:

56.     The defendant **EPPS** solicited and accepted gifts, payments, and other things of

value from defendant **MCCRORY**, as detailed below.

57.     The defendant **EPPS** provided favorable official action on behalf of defendant

**MCCRORY** as requested and as opportunities arose, including the directing or awarding of

contracts or leases to companies owned or controlled by defendant **MCCRORY** or to companies

that were paying **MCCRORY** consulting fees.

58.     The defendants **EPPS** and **MCCRORY** took steps to hide, conceal, and cover up their activity and the nature and scope of their dealings with each other, including:

    A.     The wiring of money from one of defendant **MCCRORY's** business accounts to Wells Fargo Home Mortgage, the financial institution holding the mortgage for defendant **EPPS's** condominium in Biloxi, Mississippi.

    B.     The wiring of money from defendant **MCCRORY's** Tractor Store business account to the Edward Jones investment account owned and controlled by defendant **EPPS**, with **MCCRORY** falsely labeling the wire transaction as a consignment sale of farm equipment and similarly falsely recording the wire transaction in the books and records of the Tractor Store, in order to conceal and disguise the scheme.

59.     On or about the dates listed below, in Rankin and Hinds County in the Northern Division of the Southern District of Mississippi, and elsewhere, the defendants,

**CHRISTOPHER B. EPPS and CECIL MCCRORY**, for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted or caused to be transmitted by means of wire communication in interstate commerce, the following writings, signals and sounds:

| COUNT | DATE | AMOUNT PAID FOR THE BENEFIT OF EPPS |
|---|---|---|
| 24 | August 21, 2012 | $34,000.00 |
| 25 | September 25, 2012 | $14,000.00 |
| 26 | February 14, 2013 | $40,000.00 |
| 27 | September 4, 2013 | $50,000.00 |

All in violation of Sections 1343, 1346, and 2, Title 18, United States Code.

COUNTS 28-41

60.     The allegations contained in paragraphs 1 through 59 of this indictment are realleged and incorporated by reference as though fully set forth herein.

61.     Title 31, United States Code, Section 5313 and the regulations promulgated thereunder require any financial institution that engages in a currency transaction (*e.g.*, a deposit or withdrawal) in excess of $10,000 with a customer to report the transaction to the Department of the Treasury by filing a Currency Transaction Report ("CTR"). These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are by, or on behalf of, the same person, and they result in either currency received or disbursed by the financial institution totaling more than $10,000 during any one business day.

62.     Currency Transaction Reports are often used by law enforcement to uncover a wide variety of illegal activities such as money laundering. Many individuals engaged in such illegal activities are aware of such reporting requirements and take active steps to cause financial institutions to fail to file CTRs, such as, for example, making multiple cash deposits in amounts not more than $10,000 on the same day or on consecutive days. These active steps are often referred to as "structuring." Structuring cash transactions to avoid triggering the filing of a CTR by a financial institution is prohibited by Section 5324(a), Title 31, United States Code.

63.     Between August 5, 2009 and June 24, 2014, the defendant, **CHRISTOPHER B. EPPS**, deposited and caused to be deposited cash, or used cash or caused cash to be used to

purchase cashier's checks, totaling almost $700,000 utilizing four bank accounts which he owned or controlled.

64.     When the deposits were made, **EPPS** knew of the reporting requirement for cash transactions in excess of $10,000.  To avoid having a CTR filed, **EPPS** structured the cash transactions in amounts not greater than $10,000, as set forth below:

65.     On or about the dates set forth below, in Rankin and Hinds Counties in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **CHRISTOPHER B. EPPS**, did knowingly and for the purpose of evading the reporting requirements of Section 5313(a), Title 31, United States Code, and the regulations promulgated thereunder, structure, assist in structuring, and attempt to structure or assist in structuring the following transactions with domestic financial institutions, and cause and attempt to cause such institutions to fail to file Currency Transaction Reports required by Section 5313 for currency transactions in excess of $10,000, and did so while violating another law of the United States:

| COUNT | DATE | TIME | CASH TRANSACTION | AMOUNT | BANK | LOCATION |
|-------|------|------|------------------|--------|------|----------|
| 28 | 8/6/09 | 12:28 p.m. | deposit | $9,000 | BankPlus | Flowood, MS |
| | | 12:48 p.m. | deposit | $6,000 | Regions | Jackson, MS |
| 29 | 4/6/11 | 8:54 a.m. | purchase cashier's check | $9,000 | BankPlus | Flowood, MS |
| | | 9:24 a.m. | purchase cashier's check | $9,000 | MSPECU | Jackson, MS |
| 30 | 9/9/11 | 9:11 a.m. | purchase cashier's check | $9,000 | BankPlus | Flowood, MS |
| | | 9:21 a.m. | purchase cashier's check | $9,000 | Regions | Flowood, MS |
| 31 | 12/16/11 | 8:41 a.m. | purchase cashier's check | $9,000 | BankPlus | Flowood, MS |
| | | 9:16 a.m. | purchase cashier's check | $9,000 | Regions | Flowood, MS |
| 32 | 2/3/12 | 10:15 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |

|  |  | 10:27 a.m. | purchase cashier's check | $7,500 | Regions | Flowood, MS |
|---|---|---|---|---|---|---|
| 33 | 3/26/12 | 9:24 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |
|  |  | 9:35 a.m. | purchase cashier's check | $6,000 | Regions | Flowood, MS |
| 34 | 4/26/12 | 9:25 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |
|  |  | 9:35 a.m | purchase cashier's check | $9,500 | Regions | Flowood, MS |
| 35 | 6/26/12 | 8:59 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |
|  |  | 9:10 a.m. | purchase cashier's check | $9,500 | Regions | Flowood, MS |
| 36 | 7/31/12 | 9:22 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |
|  |  | 9:37 a.m. | purchase cashier's check | $7,000 | Regions | Flowood, MS |
| 37 | 10/4/12 | 10:49 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |
|  |  | 11:03 a.m. | purchase cashier's check | $9,500 | Regions | Flowood, MS |
| 38 | 6/24/13 | 10:26 a.m. | deposit | $9,200 | BankPlus | Flowood, MS |
|  |  | 10:36 a.m. | deposit | $9,500 | Regions | Flowood, MS |
| 39 | 7/8/13 | 8:56 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |
|  |  | 9:13 a.m. | purchase cashier's check | $9,500 | Regions | Flowood, MS |
| 40 | 7/19/13 | 10:55 a.m. | deposit | $8,100 | BankPlus | Flowood, MS |
|  |  | 11:04 a.m. | deposit | $9,300 | Regions | Flowood, MS |
|  |  | 11:50 a.m. | purchase cashier's check | $9,500 | MSPECU | Jackson, MS |
| 41 | 7/31/13 | 8:55 a.m. | purchase cashier's check | $9,500 | BankPlus | Flowood, MS |
|  |  | 9:07 a.m. | deposit | $9,500 | Regions | Flowood, MS |

All in violation of Sections 5324(a)(3) and 5324(d), Title 31, United States Code; Section 1010.100, 1010.311 and 1010.313, Title 31, Code of Federal Regulations; and Section 2, Title 18, United States Code.

66.     The allegations contained in paragraphs 1 through 65 of this indictment are realleged and incorporated by reference as though fully set forth herein.

67.     On or about the dates listed below, in Rankin and Hinds County in Northern Division of the District of Mississippi, and elsewhere, the defendant, **CHRISTOPHER B. EPPS**, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, applying for and securing a loan and conducting a wire transfer, both of which involved the proceeds of a specified unlawful activity, that is bribery and kickbacks from **CECIL MCCRORY** and others known and unknown to the Grand Jury, knowing that the transactions were designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, specifically:

| COUNT | DATE | TRANSACTION | FINANCIAL INSTITUTION | AMOUNT |
|-------|------|-------------|----------------------|--------|
| 42 | November 8, 2011 | Mortgage for Biloxi Condominium | Wells Fargo Home Mortgage | $257,000.00 |
| 43 | June 12, 2013 | Wire Transfer for Pass Christian Condominium | Edward Jones | $200,000.00 |

All in violation of Sections 1956(a)(1)(B)(i) and 2, Title 18, United States Code.

68.    That on or about the dates listed below, in Rankin County in the Northern Division of the Southern District of Mississippi, and elsewhere, the defendant, **CHRISTOPHER B. EPPS**, a resident of Flowood, Mississippi, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a U.S. Individual Income Tax Return, Form 1040, of **CHRISTOPHER B. EPPS** for the calendar years hereinafter specified. The subject returns were false and fraudulent as to material matters, in that they represented that total income for **EPPS** and his wife on Line 22 of each individual Form 1040 was as stated below, whereas, as the defendant then and there knew, the correct and actual total income for **EPPS** and his wife on Line 22 of each individual Form 1040 during the subject calendar years was actually higher as set forth below.

| COUNT | OFFENSE DATE | TAX YEAR | TOTAL INCOME REPORTED | ACTUAL TOTAL INCOME |
|-------|--------------|----------|-----------------------|---------------------|
| 44 | March 3, 2009 | 2008 | $205,540.00 | $405,540.00 |
| 45 | March 23, 2010 | 2009 | $206,511.00 | $357,820.81 |
| 46 | March 5, 2011 | 2010 | $217,444.00 | $249,144.00 |
| 47 | March 13, 2012 | 2011 | $239,245.00 | $276,245.00 |
| 48 | March 12, 2013 | 2012 | $217,109.00 | $330,109.00 |
| 49 | March 25, 2014 | 2013 | $209,901.00 | $386,901.00 |

All in violation of Section 7206(2), Title 26, United States Code.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

69.    As a result of committing the offenses as alleged in this Indictment, the defendants shall forfeit to the United States all property involved in or traceable to property involved in the offenses, including but not limited to all proceeds obtained directly or indirectly from the offenses, and all property used to facilitate the offenses.

70. The grand jury has determined that probable cause exists to believe that the following property is subject to forfeiture as a result of one or more of the offenses alleged in this indictment:

1) Real property located at 1100 West Beach Boulevard, Unit 304, Pass Christian, Harrison County, Mississippi, more particularly described as follows:

   Unit Number Three Hundred Four (304), PASS MARIANNE CONDOMINIUMS, a condominium according to the official map or plat thereof on file and on record in the office of the Chancery Clerk of the First Judicial District of Harrison County, Mississippi, in Plat Book 50 at page 6 thereof, together with an undivided interest in and to the common elements and appurtenances thereof, as set forth in the Declaration of Condominiums and therefore subject to that certain Declaration of Condominium recorded as Instrument #2007-8014-D-J1 and corrected and re-recorded as Instrument #2007-8385-D-J1 thereof;

2) Real property located at 511 Shalom Way, Flowood, Rankin County, Mississippi more particularly described as:

   LOT 22, LINEAGE LAKE OF LAKELAND, PART 1 AMENDED, a subdivision according to the map or plat thereof on file and of record in the office of the Chancery Clerk of Rankin County at Brandon, Mississippi in Plat Cabinet D at Slots 44, 45 and 46, reference to which map or plat is hereby made in aid of and as a part of this description.

   TOGETHER WITH: an easement for ingress and egress and regress over all private streets and right-of-ways by virtue of Article VIII, Section 8.1, 8.2 and 8.7 of the covenants as recorded in Book 1042 at Page 490;

3) All funds on deposit in Edward Jones account numbered XXX-XX764-1-0;

4) All funds on deposit in Edward Jones account numbered XXX-XX711-1-6;

5) All funds on deposit in Regions Bank account numbered XXXXX1628;

6) All funds on deposit in Regions Bank account numbered XXXXX1636:

7) All funds on deposit in Bank Plus account numbered XXXXX2116;

8) All funds on deposit in Mississippi Public Employees Credit Union account

numbered XXXXX2469;

9) One (1) 2010 Mercedes Benz S550, VIN: WDDNG7BB6AA331787; and

10) One (1) 2007 Mercedes Benz S65 V12 AMG, VIN: WDDNG79X37A053800.

Further, if any property described above, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property, which cannot be divided without difficulty, then it is the intent of the United States to seek a judgment of forfeiture of any other property of the defendants, up to the value of the property described in this notice or any bill of particulars supporting it.

All pursuant to Section 981(a)(1)(A) & (C), Title 18, United States Code, Section 982(a)(2), Title 18, United States Code, Section 730(a)-(e), Title 26, United States Code, Section 7303, Title 26, United States Code and Section 5317(c)(1), Title 31, United States Code.

HAROLD H. BRITTAIN
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

A TRUE BILL:
S/SIGNATURE REDACTED
Foreperson of the Grand Jury

This indictment was returned in open court by the foreperson or deputy foreperson of the grand jury on this the ___5th___ day of August, 2014.

UNITED STATES MAGISTRATE JUDGE

Page 21 of 21