**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                            **PLAINTIFF**

**v.**                                            **CRIMINAL NO. 3:14cr111HTW-FKB**

**CHRISTOPHER B. EPPS**                                            **DEFENDANT**

### ORDER DENYING RECONSIDERATION

BEFORE THIS COURT is the Defendant's Motion for Amendment or Modification of Detention

**[Docket no. 90]** filed by Christopher B. Epps (hereinafter referred to as "Epps"). Epps asks this court to

release him from pretrial detention in accordance with 18 U.S.C. § 3145(b) which provides:

> (b)  Review of a detention order. If a person is ordered detained by a magistrate [United
> States magistrate judge], or by a person other than a judge of a court having original
> jurisdiction over the offense and other than a Federal appellate court, the person may file,
> with the court having original jurisdiction over the offense, a motion for revocation or
> amendment of the order. The motion shall be determined promptly.

18 U.S.C.S. § 3145 (West).

This court first notes, that 18 U.S.C. § 3145(b), by its very face, does not apply in this situation as

the plain language of the statute clearly indicates this court shall review a detention order issued "by a

magistrate [United States magistrate judge], or *by a person other than a judge of a court having original*

*jurisdiction over the offense* and other than a Federal appellate court." (Emphasis added). On December 12,

2016, this district court entered its Order of Detention [Docket no. 96]. Obviously, this court is not "a person

other than a judge of a court having original jurisdiction over the offense."

Alternatively, Epps asks this court to treat his motion as a motion for amendment under 18 U.S.C.

§ 3142 (f)(2)(B). This provision states:

> The hearing may be reopened, before or after a determination by the judicial officer,
> at any time before trial if the judicial officer finds that information exists that was
> not known to the movant at the time of the hearing and that has a material bearing
> on the issue whether there are conditions of release that will reasonably assure the

1

appearance of the person as required and the safety of any other person and the community.

18 U.S.C.S. § 3142 (West).

This court, though, is not persuaded that Epps should be returned to pretrial release. Over the course of two days, November 3rd and November 4th, 2016, this court held a hearing in this matter, allowing live testimony from several witnesses while factoring in the arguments of counsel.

Epps' criminal behavior on the late afternoon and night of October 27, 2016, is puzzling. Having entered a plea of guilty to the crime of conspiracy to knowingly conduct financial transactions affecting interstate commerce which involved the proceeds of bribery and kickbacks, and filing false tax returns in this court back on February 25, 2015, Epps was allowed to remain free on bond, while he continued to cooperate with the Federal Bureau of Investigation (hereinafter referred to as "FBI") and prosecutors with the United States Attorney's Office. That cooperation, he hoped, would persuade the sentencing judge to view this cooperation as an aspect of leverage on the sentence.

From February 25, 2015, to October 27, 2016, Epps was compliant with his bond conditions. Through his attorney he dutifully requested permission to travel outside the State of Mississippi, as well as outside the bounds of the Southern District of Mississippi. This court found these requests justified and permitted same.

During the same time period, Epps and his wife made various purchases. Since this court had forfeited much of Epps' assets as fruits of his criminal endeavors – two (2) homes; two (2) Mercedes Benz sedans; an investment account of approximately one million dollars ($1,000,000); approximately sixty-thousand dollars ($60,000) located in his home safe; - this court questioned the new purchases, determined to investigate whether such was devised from the earlier criminal endeavors. This court found no connection, as Epps' wife is employed and he receives retirement benefits from his lengthy employment with the Mississippi Department of Corrections.

Then came the afternoon/night of October 27, 2016. Acutely aware that he was under the glare of bond supervision; that he knew he could not violate any of its terms and conditions, especially that which forbade him from committing any new crimes; he nevertheless did just that.

Under the emerging cloak of nightfall, he drove alone over to his old residence. He carried a flashlight, reflecting his recognition that the electricity would be off. He was aware that he no longer owned the house and had no legal right to enter. Earlier, the United States Marshals' Service had notified him that after the date of May 9, 2016, he could no longer enter the house to claim or remove any items located therein.

The house was locked; the garage door was down. The house was posted with signs warning the public that the house was protected by the government and access was prohibited by "No Tresspassing" signs.

The house had been sold. The new owner was scheduled to take physical possession the very next day. Indeed, it was he who discovered the trespass/burglary. When the new owner inspected the house the next day, he concluded that items were missing – the landscaping light system transformer; four (4) small landscaping lights; and one (1) large landscaping light. Thereafter, he contacted the authorities.

Epps admits that he entered the house that night; that he had no permission to do so; that he removed the above-mentioned items from the house. To gain entrance Epps used his garage door code which raised the locked garage door just high enough for him to bend over and enter the garage.

Epps says his actions were simply a lapse of judgment, that he harbored no criminal intent, just a compelling desire to retrieve some items he had forgotten to claim before May 9, 2016.

Neither that night, nor the following day did Epps advise the government of his actions. This, too, he claims as an oversight.

He adds that had he been possessed of some criminal intent, he would not have exited his truck, crossed the street and engaged in conversation with a neighbor before he entered the house. This point is not persuasive. Another way of viewing this circumstance is that Epps came over to his former home in the late afternoon when he expected his neighbors to be inside their homes where they would not see him

removing items from the house and that upon being observed by one of the neighbors, he had no choice but to engage that neighbor in conversation. Incidentally, he told the neighbor that he had a legal right to enter the house.

When Epps was arrested at this new house, the stolen items were found there. The prosecution contends that they were stored in a manner incompatible with expected imminent use, as opposed to Epps' testimony that this sharp interest in re-claiming these items was borne of a desire to utilize them in a decoration scheme he and his wife were preparing immediately before he left the house to obtain these items.

As Epps was being arrested, he obtained from his home safe some money he contemplated he might need for posting of a bond: five-thousand dollars ($5,000). This court is not sure of the origin of this money, nor why Epps had to have this much cash on hand.

The facts of this violation persuade this court of the following: Epps knew his actions would be violative of his bond conditions; that the timing of his trespass occurred the day before the new owner was to take physical possession of the house; that Epps made no effort before or after the trepass to inform the authorities of any need to enter the house; that this court cannot say how long Epps was in the house searching for or removing items; that upon his arrest, he was possessed of at least five-thousand dollars ($5,000), the origins of which are unknown to this court.

The strictures of 18 U.S.C. § 3148(b) govern here, proclaiming:

(b)   Revocation of release. The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer--

(1)   finds that there is—

(A)   probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

4

> (B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that—

> (A) based on the factors set forth in section 3142(g) of this title [18 USCS § 3142(g)], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

> (B) the person is unlikely to abide by any condition or combination of conditions of release.

> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title [18 USCS § 3142] and may amend the conditions of release accordingly.

18 U.S.C.S. § 3148 (West).

Further, this court is satisfied that Epps' actions amount to violations of Mississippi Code § 97-17-23, which provides:

> (1) Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

Miss. Code Ann. § 97-17-23 (West). The Mississippi Legislature has defined a dwelling house as "Every building joined to, immediately connected with, or being part of the dwelling house, shall be deemed the dwelling house." Miss. Code Ann. § 97-17-31 (West). The Mississippi Court of Appeals also found, in a case with facts very similar to those in the case *sub judice*, that an unoccupied dwelling house that was for sale, would still fall under the definition of a dwelling house for purposes of Miss. Code § 97-17-23. *Sheffield v. State*, 881 So.2d 249 (Miss. Ct. App. 2003); *Cert. dismissed without opinion Sheffield v. State*, 2005 Miss. Lexis 87 (Miss. Feb. 3, 2005).

Further, this court is persuaded that Epps' actions may also have violated 18 U.S.C. § 641 which provides:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--

Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $ 1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

18 U.S.C.S. § 641 (West).

This court is also convinced Epps' actions may have violated 18 U.S.C. § 1361, which provides:

Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished as follows:

If the damage or attempted damage to such property exceeds the sum of $ 1,000, by a fine under this title or imprisonment for not more than ten years, or both; if the damage or attempted damage to such property does not exceed the sum of $ 1,000, by a fine under this title or by imprisonment for not more than one year, or both.

18 U.S.C.S. § 1361 (West).

Epps knew that he had no lawful right to enter that house that night and remove any items. Any right he had to be alone in that house expired on May 9, 2016. He knew that and had signed a Notice to Vacate to that effect:

NOTICE TO VACATE

Occupants
511 Shalom Way
Flowood, MS 39232
CATS#: 14-FBI-005265

The subject property is being seized pursuant to a Final Order of Forfeiture filed in the U.S. District Court, March 18, 2016. Previously you were advised on March 25, 2016 by [a U.S. Deputy Marshal] that you would have 30 days to move out of the property. You have requested a two-week extension from the initial date of April 25, 2016. This is a formal notice to vacate the property two weeks from the initial notice to vacate date. You will be required to have vacated the premises on May 9, 2016.

When you vacate the property, please provide notice to Tonya Ham, U.S. Marshals Service, at XXX-XXX-6852, remove your personal property from the residence, notify the utility company and obtain and pay all final utility fees. Leave the property in broom clean condition.

PLEASE NOTE THIS EXTENSION CAN BE NO LATER THAN MAY 9, 2016. ISN, AT OUR INSTRUCTIONS, WILL ARRANGE TO CHANGE THE LOCKS AND TAKE FULL POSSESSION OF THE PROPERTY. ALL PERSONAL PROPERTY REMAINING WILL BE CONSIDERED ABANDONED AND DISPOSED.

**FAILURE TO OBSERVE THIS REQUIREMENT MAY RESULT IN A FINE AND/OR IMPRISONMENT IN ACCORDANCE WITH 18 USC 641 OR 18 USC 1361.**

[Docket no. 87-14, SEALED]. Epps signed that document on April 14, 2016.

This court, then, is still persuaded that Epps violated his bond conditions and that there exists no condition or combination of conditions of release that would assure that the defendant will not pose a danger to any other person or the community.

SO ORDERED, this the 23rd day of December, 2016.

s/ HENRY T. WINGATE_____
UNITED STATES DISTRICT COURT JUDGE