**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**

**V.**                                                        **CRIMINAL NO. 3:14CR111-HTW-FKB**

**CHRISTOPHER B. EPPS**

**MOTION FOR COMPASSIONATE RELEASE**

Comes now Defendant Christopher B. Epps and files this to Motion for Compassionate Release.

### I. Introduction.

Mr. Epps's motion should be granted under the "extraordinary and compelling reasons" prong of § 3583(c)(1)(A). Release under this provision is called for because of the health dangers created by the COVID-19 pandemic combined with Mr. Epps's health conditions, which make him more vulnerable to COVID-19 than other inmates. For the reasons stated below, we ask the Court to grant the Motion as each day in custody brings greater risk to Mr. Epps's life.

### II. Relevant facts and procedural history.

The prosecution charged Mr. Epps in a 49-count indictment of a crime related to money laundering. Mr. Epps took responsibility by pleading guilty to Count 23 Conspiracy to Commit Money Laundering in violation of 18 U.S.C. §

1

1956(h) and Count 44 Filing Fraudulent Tax Return in violation of 18 U.S.C. § 7206(2). The Court sentenced him to serve 235 months as to Count 23 and 36 months as to Count 44, to run concurrently, followed by 3 years of supervised release as to Count 23 and 1 year as to Count 44, to run concurrently.

Mr. Epps is serving his prison term at FCI Seagoville in Texas. According to the BOP website, Mr. Epps is due to be released on July 12, 2033. The undersigned is not sure whether this estimated release date considers good time credit. Therefore, his release date may be sooner.

Mr. Epps suffers from an array of illnesses, such as hyperlipidermia, hypertension, unspecified glaucoma, enlarged prostate, and gout. (See Exhibit 1, Medical Record). Most importantly, concerning this motion, Mr. Epps has suffered from a confirmed case of COVID-19.

As the Court is well aware, the health risks associated with COVID-19 are grave and can be fatal. The hazardous situation caused by COVID-19, combined with the law analyzed below, justifies allowing Mr. Epps to serve the remaining months of his sentence on house arrest.

### III. Argument.

A.   **Mr. Epps successfully exhausted all administrative remedies.**

Mr. Epps submitted a request for compassionate release due to COVID-19 and medical concerns on January 30, 2021 through the means of an inmate request

to the Warden via email. (See Exhibit 2). On February 9, 2021, he received a reply stating that the warden would provide a response when he was done with review. Since then, he has not received a response to his request. As 30 days has certainly passed since Mr. Epps sent his request to the warden, he has successfully exhausted all administrative remedies.

Even though his requests were ignored, this does not mean that the Court should deny his petition. Mr. Epps's conditions coupled with the COVID-19 pandemic, could very well lead to his demise. As described in the next subsection, the COVID-19 dangers justify granting Mr. Epps's request for compassionate release.

**B.    The COVID-19 outbreak presents a compelling and extraordinary circumstance that warrants compassionate release in Mr. Epps's case.**

On March 11, 2020, the World Health Organization ("WHO") officially classified the new strain of coronavirus, COVID-19, as a pandemic.[1] As of May 26, 2021, COVID-19 has infected over 167.8 million people worldwide, leading to

---

[1] "WHO Characterizes COVID-19 as a Pandemic," World Health Organization (March 11, 2020), available at https://bit.ly/2W8dwpS.

over 3.4 million deaths.[2] In the United States, the daily average of cases are 24,034 and the daily average death toll is 543.4.[3]

On March 13, 2020, the White House declared a national emergency, under Section 319 of the Public Health Service Act, 42 U.S.C. § 247(d)).[4] On March 16, 2020, the White House issued guidance recommending that, for the next eight weeks, gatherings of ten persons or more be canceled or postponed.[5] These drastic measures followed the issuance of a report by British epidemiologists, concluding from emerging data that 2.2 million Americans could die without drastic intervention to slow the global spread of the deadly disease.[6]

The Centers for Disease Control and Prevention ("CDC") have also issued guidance related to the deadly effects of COVID-19 on certain high-risk patients of the population. The CDC has stated that "[l]ong-standing systemic health and social inequities have put many people from racial and ethnic minority groups at

---

[2] "Coronavirus Map: Tracking the Global Outbreak," *New York Times* (March 31, 2020), available at https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html.

[3] *Id.*

[4] The White House, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), available at https://www.whitehouse.gov/presidential-actions/proclemation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[5] Sheri Fink, "White House Takes New Line After Dire Report on Death Toll," *New York Times* (March 17, 2020), available at https://www.nytimes.com/2020/03/17/us/coronavirus-fatality-rate-white-house.html?action=click&module=Spotlight&pgtype=Homepage.

[6] Fink, "White House Takes New Line After Dire Report on Death Toll," *New York Times*.

increased risk of getting sick and dying from COVID-19".[7] With Mr. Epps being a 60 years old "Black or African American" person, he falls within the category of those who need extra precautions in accordance with the CDC. (See PSR, page 2).

The CDC have issued guidance related to the deadly effects of COVID-19 on certain high-risk patients of the population. The CDC identified the population who may be at an increased risk for severe illness from COVID-19 to include people who are overweight, those who suffer with hypertension or high blood pressure, liver disease, and diabetes.[8] For these individuals, the CDC warned to take preventative actions, including avoiding crowded areas and limiting interactions with others.

In addition, the CDC has found that many conditions of detention create a heightened risk of infection to detainees—these include insufficient space to quarantine, highly congregational or shared environments, insufficient on-site medical staff, frequent coming and going of staff members, and limited ability of prisoners to exercise effective disease prevention measures (i.e., social distancing and frequent handwashing).

---

[7] "Health Equity Considerations & Racial & Ethnic Minority Groups," CDC (Feb. 12, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html

[8] "People with Certain Medical Conditions," CDC (July 30, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

The CDC advises that the coronavirus is "spread mainly from person-to-person . . . [b]etween people who are in close contact with one another . . . [t]hrough respiratory droplets produced when an infected person coughs or sneezes." The droplets can land in the mouths or noses, or can be inhaled into the lungs, of people who are within about six feet of the infected person. The coronavirus is highly contagious and those who are infected can spread the virus even if they are asymptomatic. Additionally, studies have shown that the coronavirus can survive at least three hours and possibly as long as three days on various surfaces. These characteristics of COVID-19 make BOP facilities an ideal incubation environment.

Conditions of confinement at FCI Seagoville, where Mr. Epps is located, create an optimal environment for the transmission of contagious disease.[9] Public health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings."[10]

---

[9] Joseph A. Bick, "Infection Control in Jails and Prisons," *Clinical Infectious Diseases* 45(8): 1047-1055 (2007), available at https://doi.org/10.1086/

Furthermore, the CDC recognizes that people suffering from hypertension might be at an increased risk for severe illness from COVID-19. "People with high blood pressure or high cholesterol are also more likely to suffer from Covid-19 complications because of problems with how the heart pumps blood around the body."[11] "The increased risk of COVID-19 health issues for people with high blood pressure is also recognized by the American Heart Association.[12]

In addition, case law supports the conclusion that Mr. Epps's hypertension warrants compassionate release. *See, e.g.*, *United States v. Salvagno*, No. 5:02-cr-00051-LEK, ECF No. 1181 (N.D.N.Y. June 22, 2020); *see also United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]"); *United States v. Soto*, No. 1:18-CR-10086-IT, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) ("Defendant's medical records show that he suffers from hypertension. This condition increases his risk

---

[10] Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (March 2, 2020), at https://bit.ly/2W9V6oS.

[11] https://www.msn.com/en-za/health/medical/health-conditions-that-put-you-at-risk-of-covid-19/ar-BB11lQqT

[12] https://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-about-covid-19 (stating people with high blood pressure "may face an increased risk for severe complications if they get the virus").

for serious complications from contracting COVID-19, including death."); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at * 9 (S.D.N.Y. Apr. 20, 2020) (finding hypertension to be a comorbidity that increases the risk of death from COVID-19, and "reject[ing] the Government's contention that Mr. Scparta's general good health before the pandemic speaks to whether he should now be released."); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851 (E.D.N.Y, Apr. 10, 2020) (granting compassionate release to a defendant convicted of possession of child pornography who suffers from hypertension). Moreover, when applying Section 3553(a) factors, Mr. Epps's motion should be granted. Mr. Epps has no disciplinary record and has taken a plethora educational courses. In fact, the BOP qualifies Mr. Epps's general risk level as -1 and his violent risk as a 0. (See exhibit 3). This shows that Mr. Epps would not be a danger to the public. If released, he would quarantine and socially distance himself.

In summary, the COVID-19 virus is highly transmissible, extraordinarily dangerous, and poses a severe threat to Mr. Epps. The conditions at FCI Seagoville do not allow Mr. Epps to take the self-care measures required by the CDC to protect his safety. Therefore, he asks the Court to order his immediate release from prison, and further order that he serve the remainder of his sentence on home confinement.

## IV. Conclusion.

For the compelling reasons analyzed, the Court should enter an order granting Mr. Epps's Motion for Compassionate Release and direct the BOP to release Mr. Epps from FCI Seagoville and require him to serve the remainder of his sentence on home confinement. The "extraordinary and compelling reasons" prong of § 3583(c)(1)(A) allows such relief. Release under this provision is warranted because of the health dangers created by the COVID-19 pandemic.

WHEREFORE, Defendant Christopher B. Epps asks this Court to grant his Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A).

Respectfully submitted May 28, 2021.

**CHRISTOPHER EPPS, Defendant**

BY:  s/ *Princess Abby*
**Princess Abby** (MB # 106000)
Research & Writing Specialist
Southern District of Mississippi
200 S. Lamar St., Suite 200 North
Jackson, Mississippi 39201
Telephone: (601)948-4284
Facsimile: (601)948-5510
Email:  princess_abby@fd.org

Attorney for Defendant

## CERTIFICATE OF SERVICE

    I, Princess Abby, certify that on May 28, 2021, this Motion was filed with the Clerk of the United States District Court for the Southern District of Mississippi, using the electronic case filing system, which in turn sent an electronic copy of this Motion to all attorneys of record in this case.

                                              s/ *Princess Abby*
                                              **Princess Abby** (MB # 106000)
                                              Attorney for Defendant