**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATE OF AMERICA**

**v.**                                           **CRIMINAL NO.  3:14-cr-111-HTW-FKB**

**CHRISTOPHER B. EPPS**


**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR COMPASSIONATE RELEASE**

Defendant Christopher B. Epps seeks compassionate release under 18 U.S.C.

§ 3582(c)(1)(A)(i), relying on the threat posed by the COVID-19 pandemic.  ECF Doc. No. 124

(Motion for Compassionate Release (COVID-19)).  The United States respectfully opposes the

motion.

The Government concedes that this defendant has already exhausted his administrative

remedies within the Federal Bureau of Prisons (BOP).  Therefore, this motion is ripe to be

considered on the merits.  The defendant does not ask for a sentence reduction, but only to be

placed on house arrest for the remaining months of his sentence.  ECF Doc. No. 124, at 2, 9.  For

the reasons described herein, this would be improper both as a matter of law and because a

sentence reduction is not warranted.

The Defendant has already contracted and recovered from COVID-19 and has, since his

recovery, been fully vaccinated against COVID-19 and therefore does not present an

extraordinary and compelling reason permitting relief.  Moreover, relief is not justified in

consideration of the factors listed under 18 U.S.C. § 3553(a).  This Court should now deny this

motion with prejudice because the defendant has not met his burden under the statute.

I.      **Background**

A.      **Factual Background and Criminal Conduct**

On February 25, 2015, the defendant pled guilty to Counts 23 and 44 of his federal

indictment, respectively charging the defendant with conspiracy to commit money laundering in

violation of 18 U.S.C. § 1956(a)(1)(B)(i) and filing a fraudulent tax return in violation of 26

U.S.C. § 7206(2).  Unnumbered ECF Entry, dated 02/25/2015.  On May 24, 2017, this

Honorable Court sentenced the defendant to a cumulative total of 235 months imprisonment, a

$100,000 fine, and a cumulative total of three years of supervised release.  Unnumbered ECF

Entry, dated 05/24/2017; *see also* ECF Doc. No. 110 (Judgment).

In summary, the criminal conduct of the defendant centered around a series of bribes and

kickbacks paid to the defendant during his time as the Commissioner of the Mississippi

Department of Corrections (MDOC).  The Investigation disclosed that from 2008 to June 2014,

multiple individuals provided bribes and kickbacks to the defendant in exchange for MDOC

contracts.  ECF Doc. No. 108 (Presentence Investigation Report, sealed, hereinafter "PSR"), ¶

30.  The defendant personally received almost $1,400,000 as a result of his criminal behavior and

unjustly enriched others by approving hundreds of millions of dollars worth of contracts directly

related to the defendant's bribes and kickbacks.  PSR, ¶¶ 36, 112, 121.  The defendant failed to

report the almost $1,400,000 he received to the IRS when filing his tax returns, causing a tax loss

of $227,000.  PSR, ¶¶ 36, 128.

The defendant is serving his sentence at FCI Seagoville in Seagoville, Texas, with an

anticipated release date of July 12, 2033 with good credit time. He has served approximately 55

months, and has credit for good conduct time of approximately 8 months, for total time served of

approximately 63 months. He has not committed any disciplinary infraction during his time in

custody.  According to the BOP's calculation, as of June 3, 2021, the defendant has served approximately 23.4% of his full term.

On February 28, 2018, a detainer was placed on the Defendant by the State of Mississippi, where the defendant is set to serve 25 years in MDOC custody concurrent with his federal sentence.

### B.      Request for Compassionate Release

On January 30, 2021, the defendant submitted a request for compassionate release to the warden.  ECF Doc. No. 124-2.  The request was based on the defendant's prior hospitalization in Intensive Care due to complications from COVID-19 as well as the following identified medical conditions: hypertension, hypolipodemia,[1] cardiac issues, and also damage and injury to the defendant's respiratory system during his COVID-19 infection. The defendant does not expressly identify what type of cardiac issues nor does he explain the damage or injury to his respiratory system resulting from his earlier COVID-19 infection. On February 26, 2021, the warden denied this request.

On May 28, 2021, the defendant, through counsel, submitted a motion to this Court for compassionate release. The defendant asserted an array of health issues, namely hyperlipidermia,[2] hypertension, unspecified glaucoma, enlarged prostate, and gout, as well as the fact that the defendant has already suffered from a confirmed case of COVID-19. ECF Doc. No. 124, at 2.

---

[1] The government believes the defendant mistyped this condition in his original request to the warden and that the condition is hypolipidemia.  "Hypolipodemia" does not appear to be a medical condition.  In the defendant's medical records, it is indicated that, in fact, he suffers from hyperlipidemia.

[2] The government believes the defendant mistyped this condition in his motion and that the condition intended is hyperlipidemia.  In the defendant's medical records, it is indicated that, in fact, he suffers from hyperlipidemia.

Based on the above-stated facts regarding the defendant's request to the warden at his facility, the government agrees that the defendant has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).  Therefore, the matter is ripe to be considered on the merits and this Court must determine whether compassionate release to home detention is appropriate relief.

The undersigned obtained the defendant's medical records from the BOP, the 2019 to 2021 records of which will be filed under seal as an Exhibit to this Response upon approval by the Court. The records reveal that the defendant, who is 60 years old, presents essential (primary) hypertension, hyperlipidemia, enlarged prostrate without lower urinary tract symptoms, gastro-esophageal reflux disease without esophagitis, gout, and unspecified glaucoma.[3] In his most recent medical records, the defendant's lungs are described as "clear to auscultation bilaterally" with "[n]o chest wall tenderness, rales, rhonchi, or wheezing."  The defendant's heart is described as "[r]egular rate, rhythm, [n]ormal S1, S1, [n]o gallops, murmurs, clicks."  All of the defendant's conditions appear well-controlled at this time with medication provided by the institution.

### C.      BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many

---

[3] Of this list of conditions, the CDC only identifies hypertension as a risk factor. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021).

years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. We therefore focus primarily on considerations specific to the defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

Specifically as it relates to the defendant, BOP's aggressive efforts have extended to FCI Seagoville. As of June 10, 2021, that institution houses 1763 inmates. *See* https://www.bop.gov/locations/institutions/sea/.  At present, there are two (2) inmates who are reported positive and are isolated while they are treated/recover. There are also 1142 current inmates who previously tested positive and have recovered. There have been five (5) COVID-related deaths at this institution. The latest statistics are available at www.bop.gov/coronavirus.

### D.    Vaccinations

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP receives the COVID-19 vaccine as it becomes available. As of the week of February 8, 2021, doses of the vaccine had been delivered to every BOP institution.

BOP offered the vaccine first to full-time staff because staff members—who come and go between the facility and the community—present a more likely vector for COVID-19 transmission into an institution. As of this time, vaccines have been administered to all willing staff members, and BOP continues to encourage staff members who have not accepted a vaccine

to do so. (Staff members may also obtain and have obtained vaccinations from other providers in the community.)

BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines. In general, the vaccine is offered first to inmates over 75 years of age; then to inmates over 65 years of age; then to inmates of any age who present a condition identified by the CDC as presenting a risk of severe COVID-19 disease; and then to all inmates. As of June 10, 2021, BOP has administered a total of 191,324 doses to staff and inmates nationwide. As of mid-April 2021, BOP estimated that if it continued to receive doses at the then-current pace it will have offered a vaccine to every inmate in its custody by June 1, 2021. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

At FCI Seagoville, where the defendant is held, BOP has fully vaccinated 174 staff members, and 1291 inmates (which is approximately 73% of the current inmate population and does not account for those additional inmates who declined vaccination).

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

II.     **Discussion**

A.      **Governing Law**

As a preliminary matter, it is worth respectfully noting that this Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20, 2020) (Sanchez, C.J.); *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3 (E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020) (Kearney, J.); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").  Under this basis, the defendant is barred from receiving the only remedy he seeks through motion to this Court.  The only mechanism by which this Court could affect his transfer to a particular location outside the BOP would be by granting this defendant compassionate release.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)  extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[4]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

---

[4]  The inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

(A)     Medical Condition of the Defendant.—

    (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)     The defendant is—

        (I)     suffering from a serious physical or medical condition,

        (II)     suffering from a serious functional or cognitive impairment, or

        (III)     experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     Family Circumstances.—

    (i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)     Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is

- 10 -

"rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted).

    **B.**    **COVID-19 and Compassionate Release**

    The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen, J.) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

    The government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020

WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (Ranjan, J.)).

The CDC's list of risk factors was most recently updated on May 13, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[5]

---

[5]  Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the government maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g.*, *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (Cogburn, J.); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (Slomsky, J.) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").  In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. The government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine. It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors, updated on March 29, 2021, states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."

C.      **The Defendant's Circumstances**

Here, the defendant presents the CDC-identified risk factor of hypertension.[6] However, he no longer presents an "extraordinary and compelling reason" because he has been vaccinated.

On or about December 16, 2020, BOP administered to the defendant the first dose of the COVID-19 vaccine produced by Pfizer. The second dose was administered on or about January 4, 2021. Therefore, the BOP has administered to the defendant both doses of the COVID-19 vaccine produced by Pfizer.

As a result, the defendant's motion for compassionate release should be denied. As the government has explained, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist in this case. The defendant has received a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. *See* FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

---

[6] As noted in Footnote 3, *infra*, hypertension is the only CDC risk factor among the conditions listed by the defendant.

Various studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found that the vaccine, based on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease as defined by the CDC and 95.3% effective against severe disease as defined by the FDA.

https://www.businesswire.com/news/home/20210401005365/en/.

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . . ." "Interim Estimates of Vaccine Effectiveness," https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

A study issued on April 28 and reported by the CDC found that the efficacy rate of the Pfizer and Moderna vaccines was the same (approximately 94%) in the population over the age of 65 as in the population of adults as a whole, showing the effectiveness of the vaccines even in a group that is particularly vulnerable to severe outcomes. https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm?s_cid=mm7018e1_w (last accessed May 2, 2021).

Even more significantly, thus far, the vaccines are proving remarkably effective not just in limiting infection, but in fulfilling their most important purpose: limiting severe disease and death. The CDC tracks "breakthrough" infections after full vaccination. *See*

- 14 -

https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last

accessed June 13, 2021). It states that as of June 7, over 139 million people had been fully

vaccinated with one of the three approved vaccines, and among those people the CDC recorded

only 3,275 hospitalizations, and 603 deaths (100 of which were asymptomatic or not related to

COVID). That means that the risk of death in this group after full vaccination, with a

symptomatic case of COVID-19, was about 1 in 275,000, a chance far below the ordinary health

risks commonly faced by inmates and all others. Thus, by being vaccinated, the defendant has

provided effective "self-care" against the virus and does not present any extraordinary and

compelling reason allowing compassionate release. As one court summarized:

> Here, Defendant is not at high risk of contracting severe COVID-19 because
> Defendant will have received both does of the Pfizer vaccine by the time he
> would be released. According to clinical trials published on the CDC's website,
> the Pfizer vaccine was 95% effective at preventing COVID-19 in people who did
> not have a previous infection. More importantly for purposes of this motion,
> clinical trials have shown that the Pfizer vaccine is 100% effective at preventing
> severe disease. Therefore, because Defendant will be at little-to-no risk of severe
> COVID-19 shortly after receiving his second Pfizer dose, there are no
> "extraordinary and compelling reasons" justifying a compassionate release in this
> case. *See United States v. Miller*, No. 13-20928, 2021 WL 1115863, at *2 (E.D.
> Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence
> showing that severe complications or death from COVID-19 is likely, or even
> possible, after an individual has received a full vaccination regimen. Over forty
> million individuals have been fully vaccinated in the United States, and the court
> does not know of a single confirmed death of a fully vaccinated individual from
> COVID-19.").

*United States v. Groom*, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021) (Sargus, J.). *See also*

*United States v. Wills*, 2021 WL 2179256, at *1 (D. Or. May 27, 2021) (Brown, J.) (citing many

cases); *United States v. Otero-Montalvo*, 2021 WL 1945764, at *3 (E.D. Pa. May 14, 2021)

(Schmehl, J.) (41-year-old defendant presents asthma and obesity, but has been vaccinated; the

court dismisses his complaints regarding prison management, stating, "The BOP and FCI Fort

Dix administering vaccinations shows that they are taking the appropriate precautions to the

COVID-19 pandemic and are safeguarding inmates."); *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) (Gallagher, J.) ("Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus. On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity from the category of risk constituting an "extraordinary and compelling reason" to consider compassionate release."); *United States v. Session*, 2021 WL 2195505 (W.D.N.Y. June 1, 2021) (Larimer, J.) ("The fact that Session has contracted the virus without significant impact and in light of the fact that he has been vaccinated, his risk of further infection seems quite minimal."); *United States v. Dixon*, 2021 WL 2315193, at *2 (N.D. Ohio June 7, 2021) (Adams, J.) (in light of the sharply declining positive rate in BOP facilities and the number of vaccinations, "the Court can no longer find that the COVID-19 pandemic can be relied upon to demonstrate extraordinary and compelling reasons.").

Recent decisions overwhelmingly agree with this assessment.[7] *See, e.g.*, *United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021) (Logan, J.); *United States v. Smith*, 2021 WL 1890770, at *3-6 (E.D. Cal. May 11, 2021) (Mueller, J.) (extensive discussion, concluding that there is a "rebuttable presumption" that "if a defendant has received at least the first dose of an authorized vaccine and, if necessary, has scheduled a second dose as specified by the manufacturer and authorized by the [FDA], then the risk of severe harm from COVID-19 is not an 'extraordinary and compelling' reason under § 3582(c)(1)(A)(i) unless the defendant offers

---

[7] This string cite provides just some of the numerous decisions in recent months affirming this point. The government will provide additional citations to the Court at its direction, if requested.

evidence of an elevated personal risk despite vaccination."); *United States v. Jackson*, 2021 WL 1927506, at *3 (N.D. Cal. May 13, 2021) (Breyer, J.); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (Sabraw, C.J.) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated against COVID-19); *United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) (Arterton, J.); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) (Underhill, J.) ("Given current understanding, the Pfizer vaccine is so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule—and certainly not extraordinary and compelling."); *United States v. Shepard*, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021) (Moss, J.); *United States v. Stewart*, 2021 WL 1011041, at *2 (D. Haw. Mar. 16, 2021) (Mollway, J.); *United States v. Decano*, 2021 WL 1095979, at *6 (D. Haw. Mar. 22, 2021) (Gillmor, J.); *United States v. Gordon*, 2021 WL 2094470, at *3 (D. Haw. May 24, 2021) (Seabright, C.J.) (54-year-old defendant presents diabetes, heart disease, obesity, and possible kidney disease; relief is denied as he has been vaccinated); *United States v. Johnson*, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021) (Russell, J.); *United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021) (Barbier, J.); *United States v. Robinson*, 2021 WL 1723542, at *4 (W.D. La. Apr. 30, 2021) (Doughty, J.) (given vaccination, "even though Robinson does have serious medical conditions, there is no extraordinary and compelling reasons supporting compassionate release."); *United States v. Gabbard*, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021) (Cox, J.); *United States v. Johnson*, 2021 WL 1550460, at *5 (D. Minn. Apr. 20, 2021) (Frank, J.) ("To the extent Johnson remains concerned about contracting COVID-19 after receiving the vaccine, the Court finds this fear entirely speculative and declines to grant release based on a generalized fear of

reinfection."); *United States v. Burks*, 2021 WL 1291935, at *2 (D. Minn. Apr. 7, 2021)

(Magnuson, J.); *United States v. Gomez-Vega*, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021)

(Gonzales, J.); *United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021)

(Crotty, J.) (also rejected other objections based on conditions at Fort Dix, where the inmate

received the first dose of the Moderna vaccine, and also recovered from COVID-19); *United*

*States v. Williams*, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) (Bell, J.); *United States v.*

*Burks*, 2021 WL 1394857, at *3-4 (W.D.N.C. Apr. 13, 2021) (Cogburn, J.); *United States v.*

*Cardoza*, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021) (Jones, J.); *United States v. Hannigan*,

2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) (Kenney, J.) ("Other courts in the Third

Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces

the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone

cannot present an extraordinary and compelling reason for compassionate release.") (citing

cases); *United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) (Joyner, J.)

(the defendant "suffers from hypertension, asthma, and prediabetes and he is obese and a former

smoker," but "[g]iven the significant protection the [Johnson and Johnson] vaccine offers and the

declining rates of COVID-19 infections in prisons, we (like many other courts) do not find that

Mr. Peterson has presented extraordinary and compelling circumstances at this time."); *United*

*States v. Stiver*, 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021) (Bissoon, J.); *United States*

*v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (Rainey, J.) (denying compassionate

release to defendant with underlying health conditions when defendant had received first vaccine

dose); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021) (Jackson, J.)

(relief is denied notwithstanding obesity, chronic kidney disease, and hypertension, in light of

vaccination and CDC information regarding efficacy; "With this information from the CDC and

knowing that Petitioner is fully vaccinated and in an environment in which many of the inmates within his facility are also vaccinated (and continuing to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration."); *United States v. Ballenger*, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021) (Settle, J.); *see also United States v. Lipscomb*, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) (Chappell, J.) (inmate received both doses; "What's more, this demolishes Lipscomb's conclusory contention BOP is not taking adequate precautions. Currently, tens—if not hundreds—of millions of Americans are scurrying to figure out how to get a vaccine. Yet Lipscomb already received both doses. This does not suggest BOP is taking COVID-19 lightly or not protecting Lipscomb.").

Defendants have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, and that variants may emerge that bypass the vaccines. These courts and others have almost uniformly rejected these arguments. One explained:

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19, the Court concludes that Rodriguez's obesity and hypertension are not extraordinary and compelling reasons justifying his release. . . . Rodriguez argues that it is unclear how effective the Pfizer vaccine is, how long its effects will last, and whether it protects against the COVID variants, leaving a risk that he could still become seriously ill. Although all evidence to date is that the Pfizer vaccine is very effective, no one claims that it is 100 percent effective, and thus there remains a small risk that Rodriguez could be infected by COVID-19 and become seriously ill from that infection. But every prisoner runs a small risk of lots of serious medical conditions (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 2021 WL 1187149, at *1-2 (D. Minn. Mar. 30, 2021) (Schlitz, J.).

Accordingly, the prevailing view is that "absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the

- 19 -

disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.). One court stated:

> The Court agrees with other courts confronting this issue that a prisoner should not be permitted to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification. Such rulings would discourage prisoners from becoming vaccinated in the hopes of early release. . . . In his reply, Hill argues that he refused the vaccination shot because the medical staff would not tell him which shot he was receiving, and he was concerned that it could cause blood clots and death. But Hill hasn't cited any scientific evidence supporting this concern; if such scientific evidence later materializes, nothing will prevent Hill from filing another motion for compassionate release.

*United States v. Hill*, 2021 WL 1807285, at *2 (N.D. Ohio May 5, 2021) (Polster, J.). *See also, e.g.*, *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) (denied after first dose, and rejects speculation regarding future effectiveness against variants: "Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation."); *United States v. Kariblghossian*, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (Snyder, J.) ("Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19) (citing CDC studies and Yang Liu, et. al., Neutralizing Activity of BNT162b2-Elicited Serum, The New England Journal of Medicine (March 8, 2021), https://www.nejm.org/doi/full/10.1056/NEJMc2102017?query=featured_home)); *United States v. Goston*, 2021 WL 872215, at *3 (E.D. Mich. Mar. 9, 2021) (Levy, J.) (finding the potential that the Pfizer vaccine does not protect against variants inadequate to justify release); *United States v. Brown*, 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021) (Wood, J.) (speculation about variants is insufficient); *United States v. Del Rosario Martinez*, 2021 WL 956158, at *3

n.10 (S.D. Cal. Mar. 10, 2021) (Anello, J.) (declining to rely on a frequently submitted declaration of Dr. Tara Vijayan, stating, "with all due respect to Dr. Vijayan's expertise and experience, the Court declines to contribute in any fashion to public skepticism regarding the safety and efficacy of the available COVID-19 vaccines or to second-guess the Food and Drug Administration's findings and decision to issue Emergency Use Authorizations for COVID-19 vaccines 'for which there is adequate manufacturing information to ensure its quality and consistency.' The Path for a COVID-19 Vaccine from Research to Emergency Use Authorization, available at www.FDA.gov/COVID19vaccines#FDAVaccineFacts (last visited 3/9/2021).").

It is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge or the vaccines prove less efficacious than studies to date suggest. If those possibilities materialize, nothing would prevent the defendant from filing another motion for compassionate release. *United States v. Singh*, 2021 WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021) (Brann, J.) ("Indeed, the majority of CDC recommendations for fully vaccinated people indicate that the CDC's primary concern is not with fully vaccinated individuals being hospitalized due to COVID-19, but with such individuals potentially spreading the virus to unvaccinated individuals. . . . It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, Singh has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon Singh to demonstrate that compassionate release is warranted.").

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease

from the virus. As inmates are vaccinated, this unprecedented period, in which the threat of the virus sometimes gives rise to "extraordinary and compelling" circumstances, should come to an end, and sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("a defendant's medical condition must be one of substantial severity and irremediability."); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (Pepper, J.) (must be extraordinary; "Many inmates suffer from pain and mental illness."). At present, the defendant does not present any such condition.

In addition, one of the factors that the defendant presents is hypertension. The CDC has consistently indicated that there is insufficient evidence to conclude that hypertension places a person at a greater risk of a severe outcome from COVID-19. The CDC previously stated that hypertension "might" present a risk, and more recently stated that it "possibly" can make a person more prone to severe illness, as distinct from many other conditions that the CDC states can make severe illness more likely. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Accordingly, many courts, with endorsement from courts of appeals, have denied relief when hypertension is the only potential risk factor presented.[8] In addition, courts have

---

[8]  *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) ("commonplace" conditions of hypertension and hyperlipidemia are not extraordinary); *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's conclusion that defendant's hypertension was not extraordinary and compelling); *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (same); *United States v. Nesbitt*, 2020 WL 3412577, at *4 (E.D. Pa. June 22, 2020) (Bartle, J.) (ordinary hypertension does not justify release); *United States v. Daniels*, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (Schiller, J.) (same); *United States v. Tartaglione*, 2020 WL 3969778, at *6 (E.D. Pa. July 14, 2020) (Slomsky, J.) (hypertension and hyperthyroidism, if presented by 64-year-old, "are not the kind of conditions that place her at a uniquely high risk of grave illness or death if infected by COVID-19."); *United States v. Martines*, 2021 WL 427285, at *2 (E.D. Pa. Feb. 8, 2021) (Kearney, J.) (hypertension of 67-year-old is not

maintained this view following the CDC's March 29, 2021, revision of its list of risk factors, which singled out hypertension as only "possibly" presenting a risk. *See, e.g.*, *United States v. Jackson*, 847 F. App'x 792, 796 (11th Cir. 2021) (not precedential) (as the risk of severe disease for one suffering from hypertension "is only potentially higher," the district court did not abuse its discretion in denying relief); *United States v. Tello*, 2021 WL 2005792, at *5 (E.D. Tex. May 18, 2021) (Crone, J.) (obesity (30.3) and hypertension are not "extraordinary" circumstances, notwithstanding the CDC's classification; "according to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight. In addition, 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control. Due to their prevalence, obesity and hypertension cannot be deemed 'extraordinary' in order to merit compassionate release."); *United States v. Robinson*, 2021 WL 1318027, at *8 (D.D.C. Apr. 8, 2021) (Moss, J.); *United States v. Bell*, 2021 WL 1839523, at *3 (E.D. Pa. May 7, 2021) (Pratter, J.) (hypertension and obesity (BMI of 33) in isolation are not sufficient to warrant release); *United States v. Garcia*, 2021 WL 2269693, at *4 (E.D. Pa. June 3, 2021) (Jones, J.) (hypertension is not a definite risk); *United States v. Phillips*, 2021 WL 2346101 (E.D. Pa. June 8, 2021) (Joyner, J.) (obesity (31.7) and hypertension of 50-year-old

---

a sufficient risk factor); *United States v. Williams*, 2020 WL 4756738, at *5 (E.D. Pa. Aug. 17, 2020) (Pratter, J.) ("Although the CDC recognizes that having certain other conditions, including hypertension or high blood pressure 'might be at an increased risk,' hypertension is not considered high risk at this time."); *United States v. Ackerman*, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (Marston, J.) ("Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted.") (citing cases); *United States v. Syed*, 2020 WL 5995053, at *5 (M.D. Tenn. Oct. 9, 2020) (Richardson, J.) (even after six months the CDC continues to state that hypertension only "might" present a risk; the court therefore "concludes that Defendant's hypertension does not constitute extraordinary and compelling reasons for his release."); *United States v. Thomas*, 2020 WL 3895781, at *3 (W.D. Va. July 10, 2020) (Urbanski, J.) ("During the pandemic, courts in this district and across the country have released individuals suffering from hypertension, but only when these individuals also suffered from other underlying medical conditions."); *United States v. Colbert*, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (Cleland, J.) ("Hypertension, a condition that affects about 46% of the U.S. adult population, high cholesterol, and having had prostate cancer in the past are not 'extraordinary and compelling' conditions.").

man do not present extraordinary circumstances); *United States v. Carlson*, 2021 WL 1820239, at *5 (D.S.D. May 6, 2021) (Viken, J.) (conditions of hypertension and obesity (BMI of 31.1) of 61-year-old are not extraordinary); *United States v. French*, 2021 WL 1316706, at *5-6 (M.D. Tenn. Apr. 8, 2021) (Richardson, J.); *United States v. Campbell*, 2021 WL 1733395, at *3 (E.D. Wis. May 3, 2021) (Stadtmueller, J.) (hypertension is not an extraordinary and compelling circumstance).

It also bears noting that the defendant contracted COVID-19 and, fortunately, apparently recovered from it without significant consequence. We cannot say that this eliminates all risk, but it appears to diminish the risk significantly.

In a peer-reviewed study recently reported by the CDC, https://www.cdc.gov/library/covid19/05072021_covidupdate.html (accessed June 13, 2021), 9,119 patients with COVID-19 infection received serial tests between December 1, 2019, and November 13, 2020, in 62 healthcare facilities in the United States. The rate of reinfection (defined as a positive test more than 90 days after resolution of the first infection) was 0.7% (a total of 63 patients). The mean number of days between the two positive tests was $116 \pm 21$. The scientists found that reinfection appeared to present less severe symptoms than the first infection, and of the 63 patients who presented reinfection, there were only two deaths. The mortality rate of those who recovered from the first infection was therefore 0.022%.

Given these facts, the large majority of courts to address the matter have concluded that the risk of severe COVID-19 disease is mitigated following recovery from the virus and compassionate release is not justified, even before vaccination. *See, e.g.*, *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) (Pratter, J.) ("the risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. . . . [T]his

Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release."); *United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020) (Seabright, J.) (reviewing studies concluding that recovered patients are at lower risk for future infections); *United States v. Carter*, 2021 WL 427110, at *1 (E.D. Pa. Feb. 8, 2021) (McHugh, J.) (relying on the same reports and reaching the same conclusion). Another court expounded: "it is highly unlikely Andrews will be reinfected, and speculative that reinfection would lead to significantly more serious symptoms than she has already experienced. Further, it is likely that a COVID-19 vaccination will be available relatively soon for inmates in the federal institutions." *United States v. Andrews*, 2020 WL 7714708, at *4 (D. Nev. Dec. 29, 2020) (McKibben, J.); *see also, e.g.*, *United States v. Jenkins*, 2021 WL 665854, at *4 (S.D. Ind. Feb. 19, 2021) (Barker, J.) ("To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19—even when that defendant has risk factors for severe symptoms. . . . The fact that the BOP is now actively vaccinating inmates against COVID-19 . . . only underscores the speculative nature of any concern about reinfection."); *United States v. Marley*, 2020 WL 7768406, at *3 (S.D.N.Y. Dec. 30, 2020) (Caproni, J.) ("With the vaccine rollout underway in the United States, the Court anticipates that Mr. Marley will receive a vaccine well in advance of his becoming susceptible to reinfection."); *United States v. Thompson*, 2020 WL 7771141, at *3 (N.D. Ill. Dec. 30, 2020) (Bucklo, J.); *United States v. Palpallatoc*, 2020 WL 7695692, at *3 (W.D. Wash. Dec. 28, 2020) (Settle, J.); *United States v. McCallum*, 2020 WL 7647198, at *1 (S.D.N.Y. Dec. 23, 2020) (Seibel, J.) ("Now that he has weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense."); *United States v. Purry*,

2020 WL 5909793, at *2 (D. Nev. Oct. 6, 2020) (Dorsey, J.) (the possibility of reinfection does not change an earlier denial of relief; "a possibility that is unconfirmed by science is insufficient to create an extraordinary and compelling circumstance justifying his release.").

This result is particularly compelled where the inmate not only was offered a vaccine but also previously recovered from the virus. *See, e.g.*, *United States v. Godoy-Machuca*, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021) (Humetewa, J.) (defendant was vaccinated and also recovered from COVID-19, providing an additional measure of protection); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (Reidinger, C.J.) (defendant presents obesity, diabetes, and hypertension, but he previously tested positive, and has received the first dose; "Because he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Roe*, 2021 WL 1711296, at *2 (S.D. Ohio Apr. 30, 2021) (Sargus, J.) (inmate recovered from COVID and received Pfizer vaccine, and therefore is not eligible for relief notwithstanding conditions including diabetes and heart, kidney, and respiratory ailments); *United States v. Haines*, 2021 WL 2255898, at *2 (E.D. Pa. June 3, 2021) (Jones, J.) (full vaccination and recovery from COVID further supports earlier denial of relief).

For all of these reasons, compassionate release is not warranted here. Further, even if the defendant is at elevated medical risk, relief should be denied. This Court must then consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the community. *See United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (per curiam) (not precedential) (summarily affirming the denial of compassionate release, in a case in which the defendant presented medical risk, upon holding that the district court did not abuse its discretion in

considering the nature of the offense, the defendant's history, and the status of the virus at the facility); *United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (per curiam) (not precedential) (granting motion for summary affirmance of denial of compassionate release, as the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the 3553(a) factors, including the substantial time remaining to be served on the sentence and the defendant's criminal history and institutional infractions).

At present, these considerations—including the defendant's risk of danger to the community, his vaccination, and BOP's strenuous efforts to protect inmates against the spread of COVID-19—counsel strongly against relief.

Moreover, the defendant has not explained where he would live, and has proven particularly recalcitrant in the past to following rules and authority. In this situation, it may be surmised that he will not regularly shelter and protect himself against the virus, such that he may be at the same or greater risk if released. *See United States v. Keeling*, 2020 WL 6273978, at *3 (D. Idaho Oct. 26, 2020) (Nye, C.J.) ("Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison.") (citing cases); *United States v. Merriweather*, 2021 WL 195371, at *8 (M.D. Tenn. Jan. 20, 2021) (Richardson, J.) (while there was a large outbreak at the prison, there is also alarming spread in the community, and "[w]here a defendant . . . has not been compliant in the past with applicable societal standards and conditions of release, the Court cannot have confidence that such defendant will 'play by the rules,' including the generally acknowledged 'rules' for minimizing risk from COVID-19.").

In addition, pursuant to the factors found in 18 U.S.C. § 3553(a), the defendant should be required to serve the remaining sentence that this Court imposed for his criminal conduct. The

defendant was a central participant in one of the biggest public corruption schemes in the history of the State of Mississippi. *See* https://www.clarionledger.com/story/news/2017/05/24/chris-epps-sentencing/341916001/ (last accessed June 16, 2021). The defendant violated the public's trust and personally benefited by receiving over a million dollars from his criminal behavior. This was not the behavior of a young and brash offender, but the deliberate and repeated criminal actions of a man with enough age and experience to fully appreciate the harm, severity, and gravity of his misdeeds. Moreover, the defendant even violated the terms of pretrial release and was placed in custody, demonstrating further lack of respect for the law even after coming under federal indictment. *See* Unnumbered ECF Entry, dated 11/04/2016.

The defendant fails to demonstrate how release, 63 months into a 235-month sentence for a serious violation of the public's trust reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). A consideration of the factors above shows that release at this point is inappropriate based on the offense of conviction, the defendant's managed medical condition, and the amount of time remaining on the defendant's sentence.

To date, courts have generally granted compassionate release where the inmate suffers from significant ailments that specifically raise the risk of an adverse outcome from COVID-19, is serving a short sentence or has served most of a lengthier one, does not present a danger to the community, and/or is held at a facility where a notable outbreak has occurred. A court recently summarized: "The common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are either (1) properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or (2) in cases

where the defendants had severe medical conditions that placed them at high risk of coronavirus complications, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Ball*, 2020 WL 4816197, at *6 (E.D. Mich. Aug. 19, 2020) (Lawson, J.).

Courts have generally denied release in circumstances comparable to those presented here, even before the advent of widespread vaccination. Courts have generally denied release in cases involving comparable crimes and lengthy sentences, even where, unlike here, the defendant presents a health risk that materially increases the risk of a severe outcome due to COVID-19. *See, e.g.*,  *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020) (Danbury inmate was eligible for consideration, as he suffers from hypertensive heart disease, COPD, dyspnea (shortness of breath), and sleep apnea, and has only one lung as a result of a pulmonectomy, putting him at risk from COVID-19, but the district court did not abuse its discretion in concluding that release, after only 19 months of a 180-month term for public corruption, is not warranted under the 3553(a) factors; the court properly relied on the limited time served, the seriousness of the crime (political corruption), and the sentencing disparity with a co-defendant's sentence that would result if the defendant were released), affirming *United States v. Pawlowski*, 2020 WL 2526523, at *4 (E.D. Pa. May 18, 2020); *United States v. Shayota*, 2020 WL 2733993 (N.D. Cal. May 26, 2020) (68-year-old defendant has significant health problems but has served only 5 months of 81-month sentence for counterfeit goods); *United States v. Rivera*, 2020 WL 3547938 (D. Haw. June 30, 2020) (defendant suffers from hyperlipidemia, hypertension, asthma, and obesity, but he stole millions from university where he was chief financial officer, and has served only 2½ years of 115-month sentence); *United States v. Burton*, 2020 WL 4226472 (E.D. Pa. July 23, 2020) (defendant is 54 years old and presents with high blood pressure, diabetes, and

diverticulitis, but he has served only 16 months of 120-month term for drug offense; also, "a review of Burton's record leads to the conclusion that he may well be a danger to the community if released. Burton has six prior adult federal and state criminal convictions, beginning in 1988 and continuing through 2015, including felony drug convictions. He has spent a significant portion of his adult life in prison or under supervision and has made zero efforts to become a law-abiding citizen."); *Easter v. United States*, 2020 WL 3315993 (E.D. Va. June 18, 2020) (defendant suffers from diabetes, but has served only 36 months of 150-month sentence for large-scale fraud, was not compliant with supervision, and has disciplinary infractions).

In sum, upon consideration of all pertinent factors, the defendant's motion for compassionate release and his request to be placed in home confinement should be denied.

## CONCLUSION

For these reasons, this Court should deny CHRISTOPHER B. EPPS motion for compassionate release with prejudice.  At this time, the Government does not request a further hearing on this matter.

Respectfully submitted on this the 17th day of June, 2021.

DARREN J. LAMARCA
Acting United States Attorney

By:    *s/Andrew W. Eichner*
ANDREW W. EICHNER (MAB 690026)
Assistant U.S. Attorney
501 E. Court Street, Suite 4.430
Jackson, MS 39201
Ph: (601)965-4480
Fax: (601)965-4409
andrew.eichner@usdoj.gov

**Exhibit**:  Defendant's BOP Medical Records, 2019-2021 (254 pages) -- To be filed under seal with permission of the Court

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 17, 2021, I electronically filed the foregoing with the Clerk of

the Court using the ECF system to all ECF participants.

<u>*s/Andrew W. Eichner*       </u>
ANDREW W. EICHNER
Assistant U.S. Attorney